RONALD WILCOX, ESQ.   Bar No. 176601
1900 The Alameda, Suite 530
San Jose, CA 95126
Tel: (408) 296-0400

UNITED STATES BANKRUPTCY COURT

<u>NORTHERN</u> DISTRICT OF <u>CALIFORNIA</u>

| | |
|---|---|
| In re: George Nielsen<br>  Deborah Nielsen<br><br>        Petitioners | ) Case No.  08-57272 ASW<br>)<br>)<br>) Chapter 13<br>)  Date: July 18, 2012<br>)  Time: 2:15PM<br>) Judge:  Hon. A. S. Weissbrodt |

**OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY FILED BY DEUTSCHE BANK NATIONAL TRUST COMPANY**

George and Deborah Nielsen, herein after Petitioners, through their attorney of record, Ronald Wilcox, respectfully oppose the Motion For Relief From the Automatic Stay filed by Deutsche Bank National Trust Company, as the amount of the post-petition delinquency is inaccurate.

**FACTUAL BACKGROUND**

1. The petitioners filed for relief on December 16, 2008. Their chapter 13 plan was confirmed on August 18, 2009.

2. That among the assets of the petition is real property located at 6055 Fairhope Place, San Jose, CA 95123.

3. Petitioners received and accepted an offer from Ocwen Loan Servicing, LLC to modify their mortgage loan on their property located at 6055 Fairhope Place, San Jose, CA 95123.

Opposition to Motion for Relief                                                                                                 1

4. An Order Granting Motion To Permit Petitioners To Modify The Loan With Ocwen Loan Servicing, LLC was signed by the Honorable Arthur S. Weissbrodt on June 2, 2010.

5. In part, the Loan Modification declared "the Loan Documents will automatically become modified on 5/1/2010 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 5/1/2010". Also stated in the loan modification is "Any past due amount as of the end of the trial period including unpaid interest, real estate taxes, insurance premiums, and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance." A copy of the Loan Modification is attached as Exhibit A.

6. The Motion For Relief From the Automatic Stay filed on June 28, 2012 indicated that the post-petition arrears were in the approximate sum of $45,286.84.

7. The Relief From Stay Cover Sheet filed on June 28, 2012 indicated that the post-petition arrears were $13,556.28.

8. Exhibit 4 to the Declaration of Tosha A. Boshoff In Support Of Motion For Relief From The Automatic Stay is a summary of payments due on the loan, payments made on the loan and the date paid. This summary indicates that as of May 1, 2010 (the loan modification effective date), the Petitioners have paid $45,838.45. According to the Loan Modification, the Petitioners should have paid $58,515.13. Therefore, it appears the post petition arrears are $12,676.68, not $45,286.84.

9. The Law Office of Ronald Wilcox called the Law Offices of Les Zieve on July 2, 2012 to discuss the post petition mortgage delinquency amount. An offer was made to cure the $12,676.68 delinquency over a 12 month period. The Law Office of Les Zieve agreed to discuss a stipulation with their client and call back. Unfortunately, no return call has been received.

10. An Amended Relief From Stay Cover Sheet was filed on July 9, 2012 indicating that the post-petition default was $45,286.84. The Law Office of Ronald Wilcox called the Law Office of Les Zieve on July 10, 2012 and left a voice mail message for Michelle Carrera about the incorrect amount of post-petition mortgage arrears reflected on the Amended Relief From Stay Cover Sheet. As of the filing of this opposition, no return call has been received.

**WHEREFORE** it is prayed that:

A) Petitioners respectfully request that the Motion for Relief from the Automatic Stay be continued to allow the creditor to cure whatever problems they are experiencing with their accounting and to allow them additional time to return the calls from the Law Office of Ronald Wilcox. Petitioners are hopeful that an agreement can be reached to cure the correct post-petition delinquency.

B) For such other and further relief as the Court deems just and proper.

Dated: 7/10/2012

/s/ Ronald Wilcox
RONALD WILCOX
COUNSEL FOR DEBTORS



*Ocwen Loan Servicing, LLC*
**HELPING HOMEOWNERS IS WHAT WE DO!™**
**WWW.OCWEN.COM**

**SUMMARY** — Here is a summary of your modified mortgage.

**NEW PRINCIPAL BALANCE.** Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, insurance premiums, and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance. **If you fulfill the terms of the trial period including, but not limited to, making any remaining trial period payments, we will waive ALL late charges that have accrued and remain unpaid at the end of the trial period.**

**INTEREST RATE.** The interest rate on your modified loan will be adjusted as noted in the attached Modification Agreement.

**ESCROW ACCOUNT.** The terms of your Modification Agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums and other required fees. Any prior waiver of escrows by your lender is no longer in effect. Ocwen will draw on this account to pay your real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that Ocwen must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment will be included in the loan payment noted in the enclosed Agreement; you do not need to remit this amount separately.

**PAYMENT SCHEDULE.** The enclosed Modification Agreement includes a payment schedule in Section 3 showing your payment plan for the life of your modified loan after the trial period.

**NO FEES.** There are no fees under the Home Affordable Modification Program.

**REPRESENTATIONS.** Please read the enclosed Modification Agreement carefully and make sure that you understand it and that the statements set forth in the "My Representations" section are true and accurate. If you have any questions, please contact us at 1 (800) 746-2936

**BORROWER INCENTIVE. [ONLY APPLIES IF ALL CONDITIONS BELOW HAVE BEEN SATISFIED]** If you make your monthly mortgage payments on time, you will accrue a monthly benefit equal to the lesser of: (i) $83.33 or (ii) one-half of the reduction in the monthly mortgage payment. As long as your mortgage loan does not become 90 days delinquent, we will apply your accrued monthly benefit to your mortgage loan and reduce your principal balance after each of the first through fifth anniversaries of the month in which the Agreement is executed. If your modified mortgage loan ever becomes 90 days delinquent, you will lose all accrued but unapplied principal reduction benefits and will no longer be eligible to accrue additional principal reduction benefits even if the mortgage loan is later brought current.

**AGREEMENT.** You must return two signed original Modification Agreements to Ocwen by the due date provided in Step 1.

---

**MAIL AGREMENTS TO:**
OCWEN LOAN SERVICING, LLC
ATTN: HAMP MODIFICATIONS
1661 WORTHINGTON ROAD
SUITE 100
WEST PALM BEACH, FLORIDA 33409

---



# MAKING HOME AFFORDABLE

**Homeowner's HOPE™ Hotline**
If you have questions about the program that your servicer cannot answer or need further counseling, call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673). The Hotline can help with questions about the program and offers access to free HUD-certified counseling services in English and Spanish.





## NOTICE TO BORROWERS

Be advised that you are signing the following documents under penalty of perjury. Any misstatement of material fact made in the completion of these documents including but not limited to misstatement regarding your occupancy in your home, hardship circumstances, and/or income will subject you to potential criminal investigation and prosecution for the following crimes: perjury, false statements, mail fraud, and wire fraud. The information contained in these documents is subject to examination and verification. Any potential misrepresentation will be referred to the appropriate law enforcement authority for investigation and prosecution.

By signing the enclosed documents you certify, represent and agree that:

"Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the program, are true and correct."

## SIGTARP Hotline

If you are aware of fraud, waste, abuse, mismanagement or misrepresentations affiliated with the Troubled Asset Relief Program, please contact the SIGTARP Hotline by:

Online Form: www.SIGTARP.gov
Phone: 877-SIG-2009 (toll-free)
Fax: 202-622-4559
Mail to: Hotline
Office of the Special Inspector General For The Troubled Asset Relief Program 1500 Pennsylvania Ave., NW, Suite 1064 Washington, D.C. 20220

For all other inquiries related to your mortgage, please contact your Lender

Investor Loan # _____

**After Recording Return To:**

_____
_____
_____

This document was prepared by _____

_____[Space Above This Line For Recording Data]_____

HOME AFFORDABLE MODIFICATION AGREEMENT
# (Step Two of Two-Step Documentation Process)

Borrower(s) ("I"): George R Nielsen Deborah A Nielsen

Servicer ("Servicer"): *Ocwen Loan Servicing, LLC*

Date of first lien Security Instrument ("Mortgage") and Note ("Note"):6/29/2006

Loan Number: 70248604

Property Address:  6055 Fairhope Place San Jose, CA 95123 ("Property")

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Servicer, the Servicer will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Servicer and agree:

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B. I live in the Property as my principal residence, and the Property has not been condemned;

    C. There has been no change in the ownership of the Property since I signed the Loan Documents;

    D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

    E. Under penalty of perjury, all documents and information I have provided to Servicer in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F. If Servicer requires me to obtain credit counseling in connection with the Program, I will do so;

G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan; and

H. In cases where I received a discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, Servicer agrees, based on this representation, that I will not have personal liability on the debt pursuant to this Agreement.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. TIME IS OF THE ESSENCE under this Agreement;

   B. If prior to the Modification Effective Date as set forth in Section 3 the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents; and

   C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Servicer a copy of this Agreement signed by the Servicer, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 5/1/2010 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 5/1/2010.

   A. The new Maturity Date will be: 4/1/2050.

   B. The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Servicer but not previously credited to my Loan. The new Principal balance of my Note will be $638,587.17 (the "New Principal Balance").

   C. $124,200.00 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $514,387.17. Interest at the rate of 2.000% will begin to accrue on the Interest Bearing Principal Balance as of 5/1/2010 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 5/1/2010. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | *Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.000% | 5/1/2010 | $1,557.70 | $625.43, adjusts annually after year 1 | $2,183.13, adjusts annually after year 1 | 5/1/2010 | 60 |
| 6 | 3.000% | 4/1/2015 | $1,809.68 | Adjusts annually | Adjusts annually | 5/1/2015 | 12 |
| 7 | 4.000% | 4/1/2016 | $2,075.66 | Adjusts annually | Adjusts annually | 5/1/2016 | 12 |
| 8 | 5.000% | 4/1/2017 | $2,353.49 | Adjusts annually | Adjusts annually | 5/1/2017 | 12 |
| 9-Loans Maturity | 5.125% | 4/1/2018 | $2,388.64 | Adjusts annually | Adjusts annually | 5/1/2018 | 384 |

Page 2 of 5

Case: 08-57272    Doc# 68    Filed: 07/11/12    Entered: 07/11/12 11:18:49    Page 7 of 10

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.D.

F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

G. If I make a partial prepayment of Principal, the Servicer may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4. **Additional Agreements**. I agree to the following:

   A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing.

   B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Servicer.

   C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

   D. Funds for Escrow Items. I will pay to Servicer on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Servicer under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Servicer in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Servicer requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Servicer all notices of amounts to be paid under this Section 4.D. I shall pay Servicer the Funds for Escrow Items unless Servicer waives my obligation to pay the Funds for any or all Escrow Items.

   Servicer may waive my obligation to pay to Servicer Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Servicer and, if Servicer requires, shall furnish to Servicer receipts evidencing such payment within such time period as Servicer may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Servicer may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Servicer any such amount.

Case: 08-57272    Doc# 68    Filed: 07/11/12    Entered: 07/11/12 11:18:49    Page 8 of 10

Servicer may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Servicer all Funds, and in such amounts, that are then required under this Section 4.D.

Servicer may, at any time, collect and hold Funds in an amount (a) sufficient to permit Servicer to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Servicer can require under RESPA. Servicer shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Servicer, if Servicer is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Servicer shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Servicer shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Servicer pays me interest on the Funds and applicable law permits Servicer to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Servicer shall not be required to pay me any interest or earnings on the Funds. Servicer and I can agree in writing, however, that interest shall be paid on the Funds. Servicer shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Servicer shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Servicer shall promptly refund to me any Funds held by Servicer.

E. That this Agreement constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

F. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Servicer and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Servicer's prior written consent, Servicer may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Servicer shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If Servicer exercises this option, Servicer shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I. That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. This Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.

J. If under the Servicer's procedures a title endorsement or subordination agreements are required to ensure that the modified mortgage Loan retains its first lien position and is fully enforceable, I understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents or to execute the Modification Agreement if the Servicer has not received an acceptable title endorsement and/or subordination agreements from other lien holders, as Servicer determines necessary.

Case: 08-57272    Doc# 68    Filed: 07/11/12    Entered: 07/11/12 11:18:49    Page 9 of 10

Loan Number 70248604  HMPDF

K. That, as of the Modification Effective Date, any provision in the Note, as amended, for the assessment of a penalty for full or partial prepayment of the Note is null and void

L. Corrections and Omissions. You agree to execute such other and further documents as may be reasonably necessary to consummate the transactions contemplated herein or to perfect the liens and

M. security interests intended to secure the payment of the loan evidenced by the Note. If an error in the terms hereof is detected after execution of this Agreement, you understand that a corrected Agreement will be provided to you and this Agreement will be void upon notice of such error. Should you elect not to sign any such corrected Agreement, your loan will revert to the terms of your original Loan Documents.

N. Mortgage Electronic Registration Systems, Inc. "MERS" is a separate corporation existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the Loan has been registered (solely as nominee for lender and lender's successors and assigns) with MERS and MERS is named as mortgagee in the Loan Documents, MERS, if necessary to comply with law or custom, has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Servicer including, but not limited to, releasing and canceling the mortgage loan.

☐ If this box is checked, Borrower(s) signature must be notarized.

In Witness Whereof, the Servicer and I have executed this Agreement.

_[signature]_  3-19-10
Borrower          Date

STATE OF _____ }
COUNTY OF _____ }

On _____, before me, the undersigned Notary Public, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, that by his/her signature on the instrument, the Individual(s) or person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the county of _____, State of _____.

Witness my hand and official seal.

Notary – State of _____
County of _____

_Deborah A. Nielsen_  3-19-10
Co-Borrower(s) – if applicable   Date

STATE OF _____ }
COUNTY OF _____ }

On _____, before me, the undersigned Notary Public, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, that by his/her signature on the instrument, the Individual(s) or person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the county of _____, State of _____.

Witness my hand and official seal.

Notary – State of _____
County of _____

_____
Servicer

_____
BY

_____
Date

If applicable: _____
Mortgage Electronic Registration Systems, Inc. – Nominee for Servicer

Page 5 of 5