```
RONALD WILCOX, ESQ.   Bar No. 176601
1900 The Alameda, Suite 530
San Jose, CA 95126
Tel: (408) 296-0400
```

UNITED STATES BANKRUPTCY COURT

<u>NORTHERN</u> DISTRICT OF <u>CALIFORNIA</u>

In re: Nielsen, George Raymond           ) Case No.  08-57272 MEH
      Nielsen, Deborah Ann                      )
                                              )
                    Debtors                       ) Chapter 13
                                              )
_____) Judge: M. ELAINE HAMMOND

**DECLARATION OF DEBORAH ANN NIELSEN IN SUPPORT OF RESPONSE TO ORDER SETTING MOTION TO VALUE**

      I, Deborah Ann Nielsen declare:

1.    I am a Debtor in the above-entitled case.

2.    Attached is a true and correct copy of my fully executed Home Affordable Modification Agreement, with Ocwen Loan Servicing, LLC, showing a principal balance of $638,587.17. **<u>Exhibit 1</u>**.

      I declare under penalty of perjury and under the laws of the state of California that the foregoing is true and correct.

      Executed October 2, 2015, in San Jose, California

/s/Deborah A. Nielsen
Deborah A. Nielsen, Debtor

**DECLARATION OF DEBORAH ANN NIELSEN IN SUPPORT OF RESPONSE TO   1
ORDER SETTING MOTION TO VALUE**

# EXHIBIT 1



**Ocwen Loan Servicing, LLC**
P.O. Box 24737
West Palm Beach, Florida 33416-4737
*(Do not send correspondence or payments to the above address.)*

WWW.OCWEN.COM

## Helping Homeowners Is What We Do!

Friday, June 25, 2010

George R Nielsen
6055 Fairhope Place
San Jose, CA 95123

**Your executed Home Affordable Modification Agreement!**

Re:   Loan Number: 70248604
       Property Address:  6055 Fairhope Place, San Jose, CA

Dear Borrower(s):

The U.S. Government has recently introduced the Home Affordable Modification Program to help homeowners like you who are struggling to make their monthly mortgage payments.

We are glad to be able to assist all qualifying homeowners save their homes from foreclosure and thank you for sending in your completed Home Affordable Modification Agreement.

Included with this letter is an executed copy of your Home Affordable Modification Agreement to keep for your records.

If you have any questions regarding your Home Affordable Modification Agreement, please call our Customer Relations Department at (800) 746-2936 Monday - Thursday 9:00 am. - 9:00 pm ET or Friday 9:00 am – 6:30 pm ET, and remember "Helping Homeowners is what we do!"

Sincerely,

Ocwen Loan Servicing, LLC

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

Investor Loan # _____

After Recording Return To:
_____
_____
_____

This document was prepared by _____

_____[Space Above This Line For Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Borrower(s) ("I"): George R Nielsen Deborah A Nielsen

Servicer ("Servicer"): *Ocwen Loan Servicing, LLC*

Date of first lien Security Instrument ("Mortgage") and Note ("Note"):6/29/2006

Loan Number: 70248604

Property Address: 6055 Fairhope Place San Jose, CA 95123 ("Property")

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Servicer, the Servicer will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Servicer and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
   B. I live in the Property as my principal residence, and the Property has not been condemned;
   C. There has been no change in the ownership of the Property since I signed the Loan Documents;
   D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));
   E. Under penalty of perjury, all documents and information I have provided to Servicer in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
   F. If Servicer requires me to obtain credit counseling in connection with the Program, I will do so;

Page 1 of 5

Loan Number 70248604                                                                    HMPDF

G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan; and

H. In cases where I received a discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, Servicer agrees, based on this representation, that I will not have personal liability on the debt pursuant to this Agreement.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. **TIME IS OF THE ESSENCE** under this Agreement;

   B. If prior to the Modification Effective Date as set forth in Section 3 the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents; and

   C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Servicer a copy of this Agreement signed by the Servicer, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 5/1/2010 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 5/1/2010.

   A. The new Maturity Date will be: 4/1/2050.

   B. The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Servicer but not previously credited to my Loan. The new Principal balance of my Note will be $638,587.17 (the "New Principal Balance").

   C. $124,200.00 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $514,387.17. Interest at the rate of 2.000% will begin to accrue on the Interest Bearing Principal Balance as of 5/1/2010 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 5/1/2010. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | *Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.000% | 5/1/2010 | $1,557.70 | $625.43, adjusts annually after year 1 | $2,183.13, adjusts annually after year 1 | 5/1/2010 | 60 |
| 6 | 3.000% | 4/1/2015 | $1,809.60 | Adjusts annually | Adjusts annually | 5/1/2015 | 12 |
| 7 | 4.000% | 4/1/2016 | $2,075.66 | Adjusts annually | Adjusts annually | 5/1/2016 | 12 |
| 8 | 5.000% | 4/1/2017 | $2,353.49 | Adjusts annually | Adjusts annually | 5/1/2017 | 12 |
| 9-Loans Maturity | 5.125% | 4/1/2018 | $2,388.64 | Adjusts annually | Adjusts annually | 5/1/2018 | 384 |

Page 2 of 5

Loan Number 70248604   HMPDF

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the Interest that will be due will be the rate set forth in Section 3.D.

F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

G. If I make a partial prepayment of Principal, the Servicer may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Servicer.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. Funds for Escrow Items. I will pay to Servicer on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Servicer under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Servicer in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Servicer requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Servicer all notices of amounts to be paid under this Section 4.D. I shall pay Servicer the Funds for Escrow Items unless Servicer waives my obligation to pay the Funds for any or all Escrow Items.

Servicer may waive my obligation to pay to Servicer Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Servicer and, if Servicer requires, shall furnish to Servicer receipts evidencing such payment within such time period as Servicer may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Servicer may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Servicer any such amount.

Page 3 of 5

Loan Number 70248604                                                                          HMPDF

Servicer may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Servicer all Funds, and in such amounts, that are then required under this Section 4.D.

Servicer may, at any time, collect and hold Funds in an amount (a) sufficient to permit Servicer to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and

Case: 08-57272   Doc# 102   Filed: 10/06/15   Entered: 10/06/15 08:58:52   Page 6 of 8

(b) not to exceed the maximum amount a Servicer can require under RESPA. Servicer shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Servicer, if Servicer is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Servicer shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Servicer shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Servicer pays me interest on the Funds and applicable law permits Servicer to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Servicer shall not be required to pay me any interest or earnings on the Funds. Servicer and I can agree in writing, however, that interest shall be paid on the Funds. Servicer shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Servicer shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Servicer shall promptly refund to me any Funds held by Servicer.

E. That this Agreement constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

F. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Servicer and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Servicer's prior written consent, Servicer may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Servicer shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If Servicer exercises this option, Servicer shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I. That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. This Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.

J. If under the Servicer's procedures a title endorsement or subordination agreements are required to ensure that the modified mortgage Loan retains its first lien position and is fully enforceable, I understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents or to execute the Modification Agreement if the Servicer has not received an acceptable title endorsement and/or subordination agreements from other lien holders, as Servicer determines necessary.

Loan Number 70248604

HMPDF

K. That, as of the Modification Effective Date, any provision in the Note, as amended, for the assessment of a penalty for full or partial prepayment of the Note is null and void

L. Corrections and Omissions. You agree to execute such other and further documents as may be reasonably necessary to consummate the transactions contemplated herein or to perfect the liens and

M. security interests intended to secure the payment of the loan evidenced by the Note. If an error in the terms hereof is detected after execution of this Agreement, you understand that a corrected Agreement will be provided to you and this Agreement will be void upon notice of such error. Should you elect not to sign any such corrected Agreement, your loan will revert to the terms of your original Loan Documents.

N. Mortgage Electronic Registration Systems, Inc. "MERS" is a separate corporation existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the Loan has been registered (solely as nominee for lender and lender's successors and assigns) with MERS and MERS is named as mortgagee in the Loan Documents, MERS, if necessary to comply with law or custom, has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Servicer including, but not limited to, releasing and canceling the mortgage loan.

☐ If this box is checked, Borrower(s) signature must be notarized.

In Witness Whereof, the Servicer and I have executed this Agreement.

_____    3-19-10
Borrower                   Date

STATE OF _____ }
COUNTY OF _____ }

On _____, before me, the undersigned Notary Public, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, that by his/her signature on the instrument, the individual(s) or person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the county of _____, State of _____.

Witness my hand and official seal.

Notary – State of _____
County of _____

_Deborah A. Nielsen_    3-19-10
Co-Borrower(s) – if applicable    Date

STATE OF _____ }
COUNTY OF _____ }

On _____, before me, the undersigned Notary Public, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, that by his/her signature on the instrument, the individual(s) or person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the county of _____, State of _____.

Witness my hand and official seal.

Notary – State of _____
County of _____

_CQ_
Servicer

BY ~~Christina Carter~~
   **Manager, Account Management**
Date **Ocwen Loan Servicing, LLC**

If applicable: _____
Mortgage Electronic Registration Systems, Inc. – Nominee for Servicer

Page 5 of 5

Case: 08-57272    Doc# 102    Filed: 10/06/15    Entered: 10/06/15 08:58:52    Page 8 of 8